UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNIFIRE, INC., a Washington corporation,
and SOURCE ONE DISTRIBUTORS, INC.,
a Florida corporation,

Case No.:

      Plaintiffs,
v.

ATLANTIC DIVING SUPPLY, INC. d/b/a
ADS, INC., a Virginia corporation,

      Defendant.
_____/

## COMPLAINT

Plaintiffs, Unifire, Inc. ("Unifire") and Source One Distributors, Inc. ("Source One" and together with Unifire, the "Plaintiffs"), hereby file this Complaint against Defendant, Atlantic Diving Supply, Inc. d/b/a ADS, Inc. ("Defendant"), and allege as follows:

### PARTIES, JURISDICTION AND VENUE

1. Unifire is a Washington corporation with its principal place of business in Spokane, Washington. Unifire is registered to do business in the State of Florida.

2. Source One is a Florida corporation with its principal place of business in Wellington, Florida.

3. Defendant is a Virginia corporation that is registered to do business in the State of Florida and is *sui juris*. Defendant is subject to the jurisdiction of this Court pursuant to Fla. Stat. § 48.193(2) because it engages in substantial and not isolated business activity in this state.

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332, as the matter involves citizens of different states and the amount in controversy exceeds $75,000.00.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this

district, or a substantial part of the property that is the subject of the action is situated in this judicial district. Venue also lies in this district pursuant to 28 U.S.C. § 1391(b)(3) because the Defendant conducts business in this district.

6. All conditions precedent to the filing of this action have been performed, satisfied, or waived.

7. Plaintiff has retained the undersigned counsel to represent it in this action and has agreed and obligated itself to pay a reasonable fee for their services.

## GENERAL ALLEGATIONS

*Source One's Business*

8. Source One is a provider of equipment, product sourcing, acquisition solutions, contracting expertise and other support services to clientele in the defense industry, national security, law enforcement, search and rescue, fire and safety, and private security sector.

9. As part of its business, Source One maintains relationships with manufacturers and vendors from which it sources products on behalf of its clients.

10. Source One's strong relationships with manufacturers and vendors results in it obtaining special pricing on equipment, among other things.

11. Source One's business also requires it to maintain strong relationships with its clients. Source One's clients provide it with confidential, detailed information on the equipment they require, which Source One in turn uses when fulfilling orders through its manufacturers and vendors.

12. In order to protect its confidential and proprietary business information, Source One (and Unifire) require (i) their employees to execute restrictive covenants, including non-disclosure agreements; (ii) their manufacturers to execute restrictive covenants, including non-disclosure agreements; (iii) maintain computers and computer servers that are password

protected; and (iv) provide only limited access to certain key personnel of files and folders containing confidential and proprietary business information.

*Source One merges with Unifire*

13. In or around December 2015, Unifire and Source One entered into an agreement whereby Unifire purchased the assets of Source One.

14. Like Source One, Unifire is a provider of high performance equipment to clientele in similar industries.

15. Source One and Unifire (collectively, "Plaintiffs") jointly claim an interest in pursuing the claims set forth herein against Defendant for its wrongful acts, and bring this action in both company names in an abundance of caution.

*Source One hires Christopher Vilter*

16. In or around February 2014, Source One hired Christopher Vilter ("Vilter") as a salesperson. Although he was living in California, Vilter at all times took direction from and reported to management in South Florida.

17. While working at Source One and Unifire, Vilter served as the face of the companies with clients, manufacturers, and vendors.

18. Although Vilter's principal role was that of a direct salesperson, in fulfilling that role he undertook additional roles in providing customer service and support. Vilter also served as a relationship manager with vendors due to his close work with representatives of manufacturers.

3
1307826v1 997312.0001

*Vilter resigns from Unifire and Source One, goes to work with Defendant, and pilfers confidential and proprietary business information*

19. On or about January 11, 2016, Vilter resigned from his employment with Unifire and Source One.

20. Shortly thereafter, Source One and Unifire learned that Vilter went to work with Defendant, which is one of their largest competitors.

21. Suspicious of Vilter's resignation, Source One and Unifire investigated the matter.

22. The aforementioned investigation revealed that shortly before leaving Plaintiffs' employ, Vilter wrongfully accessed and downloaded an Excel spreadsheet file to a Kingston external USB drive. At this same time, Vilter also wrongfully accessed and downloaded a proprietary folder named "Quotes and backup" to the same Kingston external USB drive. The investigation further revealed that he saved a Microsoft Outlook mailbox file named "CNIC.pst" to the external USB drive.

23. Vilter downloaded the materials using the laptop issued to him by Plaintiffs for company use only, and the downloaded materials emanated from Plaintiffs' computer server in Florida.

24. The materials wrongfully taken by Vilter are the lifeblood of Plaintiffs' business. The stolen materials included, but are not limited to, confidential and proprietary information such as customer quotes, manufacturer quotes, customer/manufacturer contact information, confidential pricing information, quotes with special dealer of record pricing, detailed equipment lists from customers provided in confidence to Source One and/or Unifire to assist them in sourcing products, white papers containing executive summaries on products under development, and proprietary marketing materials.

25. All of the aforementioned confidential and proprietary information was obtained by Vilter only as a result of his employment with Plaintiffs.

26. Upon information and belief, Defendant either assisted or encouraged Vilter to misappropriate Plaintiffs' confidential and proprietary business information before submitting his resignation to Plaintiffs, or Defendant subsequently became aware of the aforementioned misappropriation of Plaintiffs' confidential and proprietary business information and assisted or encouraged the misuse of that information, as set forth herein.

27. Subsequent to his resignation with Plaintiffs, Vilter and Defendant wrongfully made use of Plaintiffs' confidential and proprietary business information—and continue to wrongfully make use of it—to their benefit, and to the extreme detriment of Plaintiffs.

28. More specifically and since resigning from Plaintiffs, Vilter and representatives of Defendant have been soliciting customers and vendors of Source One and Unifire, and in doing so they are using the confidential and proprietary information previously taken from Plaintiffs in order to unfairly compete with Plaintiffs.

29. Vilter also took Plaintiffs' proprietary marketing materials and made mirror-image copies of them, but with Defendant's logo.

30. Upon information and belief, Defendant either assisted or encouraged Vilter to misappropriate Plaintiffs' proprietary marketing materials before submitting his resignation to Plaintiffs, or Defendant subsequently became aware of the aforementioned misappropriation of Plaintiffs' proprietary marketing materials and assisted or encouraged the misuse of that information.

31. Vilter and Defendant are using Plaintiffs' confidential and proprietary information in their interactions with manufacturers and customers, and are employing high pressure sales

tactics to convince these manufacturers and customers to either leave Plaintiffs or diminish their relationship with Plaintiffs, and to work with Vilter and Defendant.

32. Plaintiffs sent demand letters to Vilter and Defendant and demanded that the activities set forth above immediately cease, but Vilter and Defendant ignored the demands.

33. On or about March 28, 2016, Plaintiffs filed a complaint against Vilter in the United States District Court for the Southern District of Florida, styled *Unifire, Inc., et al. v. Christopher Vilter*, Case No. 16-cv-80475.

## COUNT I
## AIDING AND ABETTING BREACH OF THE FIDUCIARY DUTY OF LOYALTY

34. Plaintiffs reallege and incorporate paragraphs 1 through 33 as though fully set forth herein.

35. Vilter owed Plaintiffs a fiduciary duty including, but not limited to, a duty not to engage in disloyal acts in anticipation of future competition.

36. Plaintiffs reposed trust and confidence in Vilter, and Vilter accepted this trust and confidence.

37. Vilter breached his fiduciary duty owed to Plaintiffs by, *inter alia*, misappropriating Plaintiffs' confidential and proprietary business information and disclosing said information to Defendant.

38. Upon information and belief, Defendant possessed knowledge of the aforementioned breach by Vilter and substantially assisted or encouraged the wrongdoing.

39. As a direct and proximate result of Vilter's and Defendant's actions alleged herein, Plaintiffs have suffered damage.

40. Vilter's and Defendant's misconduct as described herein was intentional, malicious and/or grossly negligent.

41. Upon information and belief, Defendant either actively and knowingly participated in Vilter's misconduct alleged herein; knowingly condoned, ratified, or consented to such conduct; or engaged in conduct that constituted gross negligence and that contributed to the loss, damages, and injury suffered by Plaintiffs.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment against Defendant for compensatory damages, actual damages, punitive damages, interest, costs, and such other relief as this Court deems just and proper.

## COUNT II
## AIDING AND ABETTING CONVERSION

42. Plaintiffs reallege and incorporate paragraphs 1 through 33 as though fully set forth herein.

43. Plaintiffs are the rightful owners of their confidential and proprietary business information and, specifically, the information downloaded by Vilter onto the Kingston external USB drive.

44. Vilter's downloading of Plaintiffs' confidential and proprietary business information onto the Kingston external USB drive was not authorized by Plaintiffs, and deprived Plaintiffs of their property permanently or for an indefinite time.

45. Vilter's wrongful downloading of Plaintiffs' confidential and proprietary business information onto the Kingston external USB drive was an act of dominion wrongfully asserted over Plaintiffs' property.

46. Upon information and belief, Defendant possessed knowledge of Vilter's wrongful downloading of Plaintiffs' confidential and proprietary business information, and substantially assisted or encouraged the wrongdoing.

47. As a direct and proximate result of Vilter's and Defendant's actions alleged herein, Plaintiffs have suffered damage of an irreparable nature.

48. Vilter's and Defendant's misconduct as described herein was intentional, malicious and/or grossly negligent.

49. Upon information and belief, Defendant either actively and knowingly participated in Vilter's misconduct alleged herein; knowingly condoned, ratified, or consented to such conduct; or engaged in conduct that constituted gross negligence and that contributed to the loss, damages, and injury suffered by Plaintiffs.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment against Defendant for compensatory damages, actual damages, punitive damages, interest, costs, and such other relief as this Court deems just and proper, including, but not limited to, an order requiring Defendant and Vilter to return Plaintiffs' materials wrongfully taken by them and to cease any and all use of said materials.

## COUNT III
## COMMON LAW UNFAIR COMPETITION
(Damages)

50. Plaintiffs reallege and incorporate paragraphs 1 through 33 as though fully set forth herein.

51. Defendant has engaged and continues to engage in deceptive and fraudulent conduct, as set forth above, by making use of the confidential and proprietary business information that Vilter wrongfully took from Plaintiffs to unfairly compete with them in the market.

52. Defendant's misconduct creates a likelihood of consumer confusion.

53. Vilter's and Defendant's misconduct as described herein was intentional, malicious and/or grossly negligent.

54. Upon information and belief, Defendant either actively and knowingly participated in Vilter's misconduct alleged herein; knowingly condoned, ratified, or consented to such conduct; or engaged in conduct that constituted gross negligence and that contributed to the loss, damages, and injury suffered by Plaintiffs.

55. As a direct and proximate result of Defendant's actions described herein, Plaintiffs have been injured.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment against Defendant for compensatory damages, actual damages, punitive damages, interest, costs, and such other relief as this Court deems just and proper. Plaintiffs further request that the Court enter an order directing an accounting and disgorgement of Defendant's profits.

## COUNT IV
## INJUNCTIVE RELIEF

56. Plaintiffs reallege and incorporate paragraphs 1 through 33 as though fully set forth herein.

57. Plaintiffs possess a clear legal right to relief and, specifically, the return of the materials wrongfully taken by Vilter and Defendant.

58. Defendant's acts done in furtherance of its and Vilter's efforts to unfairly compete in the market poses a real, present and continuing threat of damage to Plaintiffs and, thus, poses an imminent threat of irreparable injury to Plaintiffs.

59. Plaintiffs have no adequate remedy at law for Vilter's and Defendant's misconduct, as set forth above.

60. Unless a preliminary and/or permanent injunction is entered by this Court directing Defendant, Vilter, as well as those acting in concert with them, to cease from the actions and conduct described above, to return Plaintiffs' materials, and to cease all use of the

materials, greater injury will be inflicted on Plaintiffs than could possibly result to Defendant by the granting of said relief. Thus, the actual and threatened harm to Plaintiffs outweighs any purported damages to Defendant.

61.   An injunction would serve the public interest.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter a preliminary and permanent injunction against Defendant mandating that Defendant, and all others acting in concert with it, return all confidential and proprietary information wrongfully taken from Plaintiffs, and enjoining Defendant, and all others acting in concert with it, from making further use of that information. Plaintiffs further request any and all further relief that the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable as a matter of law.

Respectfully submitted this 9th day of August, 2016.

> **TRIPP SCOTT, P.A.**
> *Attorneys for Plaintiffs*
> 110 SE 6th St, 15th Floor
> Fort Lauderdale, FL, 33301
> Tel: 954-525-7500
> By:/s/ *Paul O. Lopez*
> Paul O. Lopez, Esq., FBN: 983314
> (pol@trippscott.com; tlk@trippscott.com)
> John M. Mullin, Esq., FBN: 777323
> (jmm@trippscott.com; sxc@trippscott.com)
> Ryan H. Lehrer, Esq., FBN: 0084423
> (rhl@trippscott.com; sxc@trippscott.com)